# Exhibit A

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement" or the "Agreement") is entered into on November 27, 2019, by and among U-Nest Holdings, Inc. ("U-Nest") (a successor in interest to U-Nest Holdings LLC), Invesco Distributors, Inc. ("Invesco"), and Ascensus College Savings Recordkeeping Services, LLC ("Ascensus"). All parties to this Agreement are collectively referred to herein as the "Parties," and each may be referred to individually as a "Party."

**WHEREAS**, the CollegeBound 529 is a qualified tuition program governed by Section 529 of the Internal Revenue Code of 1986, as amended, sponsored by the State of Rhode Island and Providence Plantations and administered by the Rhode Island Office of the General Treasurer (the "RI Program");

**WHEREAS**, Ascensus is the program manager for the RI Program pursuant to a Program Management Agreement between the Treasurer and Ascensus dated March 18, 2016;

**WHEREAS**, on or about May 7, 2018, U-Nest Holdings LLC and Invesco entered into an Agreement for Recommending 529 Plan Securities (the "Selling Agreement");

**WHEREAS,** U-Nest Holdings LLC converted into U-Nest, a Delaware corporation, in July 2019;

**WHEREAS**, Invesco sent to U-Nest a letter dated October 31, 2019 providing written notice that it was terminating the Selling Agreement effective November 30, 2019 (the "Termination Notice");

**WHEREAS**, a dispute has arisen among the Parties as to the respective rights of the Parties following the termination of the Selling Agreement;

**WHEREAS**, U-Nest filed suit against Invesco and Ascensus (collectively, the "Defendants") in the case captioned *U-Nest Holdings, Inc. v. Invesco Distributors, Inc and Ascensus College Savings Recordkeeping Services, LLC*, No. PC-2019-11342 (Rhode Island Superior Court, Providence County) (the "Litigation"); and

**WHEREAS**, the Defendants deny any and all liability with respect to the claims asserted in the Litigation, and the Parties wish to resolve the Litigation fully and completely without further expense;

**NOW THEREFORE**, in consideration of the above recitals and the mutual promises and releases set forth below and for other good and valuable consideration, the receipt and sufficiency of which the Parties hereto acknowledge, and intending to be legally bound, the Parties agree as follows:

1.     **Termination of the Agreement**.  U-Nest acknowledges and confirms that the Selling Agreement for the RI Program will terminate as of November 30, 2019, and that it does not and will not contest the manner or effectiveness of that termination.  U-Nest acknowledges and confirms that as of the date of the execution of this Settlement Agreement, there were no agreements or understandings in existence by and between U-Nest and Invesco other than the Selling Agreement.

2.     **Continuation and Termination of Access to the RI Program.**  The Parties agree that U-Nest's rights to continue to access account information for those accounts where U-Nest is listed as the Financial Advisor in order for U-Nest to provide service to said accounts in the same manner as it has up to this point in time shall continue up to and through December 31, 2019, at 11:59 p.m. EST.  U-Nest's rights to access account information for RI Program accounts where U-Nest is listed as the Financial Advisor, including access through the 529quickview.com advisor portal as it pertains to RI Program accounts where U-Nest is listed as the Financial Advisor, and to service existing end-user clients with accounts in the RI Program will terminate on January 1, 2020.

3.     **Termination of Rights to Open New Accounts or Introduce New End-User Clients.**  U-Nest acknowledges and confirms that as of the date of this Settlement Agreement it is relinquishing and will no longer have or assert the right to open new accounts for end-users in the RI Program, and that it will not do so. Ascensus reserves the right to process applications for new end-users submitted by U-Nest before the date of this Settlement Agreement. U-Nest acknowledges that if it submits any applications for new end-users after the date of this Settlement Agreement it may prompt correspondence from the other Parties to the existing end-user clients in the RI Program that may refer to the termination described above.

4.     **Communication with Existing U-Nest End-Users**.  The Parties confirm and acknowledge that no communication or correspondence regarding the termination of the Selling Agreement will be sent to any U-Nest end-user client who is transferred out of the RI Program prior to January 1, 2020.  Any U-Nest end user client who remains in the RI Program on or after January 1, 2020 may be sent the written communication attached as Exhibit 1, and any such end-users will be transferred to house accounts on or after January 1, 2020.  Ascensus may continue to communicate with such end-users on a routine basis consistent with past practices and/or as required by applicable laws and regulations. The Parties will continue to fulfill any existing obligations of good faith and fair dealing owed to each other in their interactions and will cooperate regarding the RI Program through December 31, 2019.

5.     **Removal of Invesco from U-Nest Marketing Materials**.  Without acknowledging or admitting that any prior conduct of U-Nest concerning references to Invesco were misleading or non-compliant with any law or regulation in any way, U-Nest will remove all references to Invesco and any of its affiliates along with any trademark, trade name, service mark or logo from any and all promotional materials, sales literature, advertisements, press releases, announcements, statements, posters, signs, slides or other similar material (collectively, "Sales Material") and shall not distribute any such Sales Material containing any such references after November 30, 2019, including on social media maintained by U-Nest.  U-Nest shall exercise commercially reasonable

means within a commercially reasonably time frame following November 30, 2019 to retract or remove from the market any existing references to Invesco or uses of its trademark, trade name, service mark or logo from all such existing Sales Material. U-Nest will refile its Form ADV Part 2A - Appendix 1 Brochure (the "Brochure") with the SEC no later than December 6, 2019 to remove any reference to Invesco or any relationship by or between U-Nest and Invesco, replace the July 13, 2019 version of the Brochure currently posted on its website with the refiled Brochure immediately after it is filed, and from that date cease to use or disseminate the July 13, 2019 version of the Brochure.

6. **Dismissal with Prejudice**. The Parties will sign and file on the date of this Settlement Agreement a stipulation dismissing with prejudice the Litigation.

7. **Release of Invesco and Ascensus**. U-Nest, for itself and for its current and former parents and subsidiaries, predecessors, successors (including any trustee or debtor-in-possession), assigns, affiliates, attorneys, insurers, reinsurers, officers, directors, members, managers, principals, commissioners, shareholders, owners, agents, consultants, and employees (the "Releasing U-Nest Parties") forever fully and completely releases and discharges Invesco and Ascensus, their current and former parents and subsidiaries, predecessors, successors (including any trustee or debtor-in-possession), assigns, affiliates, attorneys, insurers, reinsurers, officers, directors, members, managers, principals, commissioners, shareholders, owners, agents, consultants, and employees, of and from any and all actions, suits, claims, duties, causes of action, demands, obligations, liabilities, rights, damages (including punitive, exemplary, consequential, incidental or lost profit damages), or liability of any nature whatsoever, of any kind, whether known or unknown (including Unknown Claims, as defined below), asserted or unasserted, whether at law or in equity which they now have, or ever had or may have, arising out of, based upon or attributable to, in whole or in part, or relating in any manner to (1) the subject matter of (i.e., the facts giving rise to) the Litigation, (2) the Selling Agreement, or (3) any aspect of the RI Program (the "Claims Released by U-Nest"). For the avoidance of doubt, the Claims Released by U-Nest do not include any actual or potential claim, whether known or unknown, involving U-Nest's participation in any Non-RI Programs.

8. **Release of U-Nest**. Invesco and Ascensus, for themselves and for their current and former parents and subsidiaries, predecessors, successors (including any trustee or debtor-in-possession), assigns, affiliates, attorneys, insurers, reinsurers, officers, directors, members, managers, principals, commissioners, shareholders, owners, agents, consultants, and employees (the "Releasing Invesco/Ascensus Parties" and, together with the Releasing U-Nest Parties, the "Releasing Parties") forever fully and completely release and discharge U-Nest, its current and former parents and subsidiaries, predecessors, successors (including any trustee or debtor-in-possession), assigns, affiliates, attorneys, insurers, reinsurers, officers, directors, members, managers, principals, commissioners, shareholders, owners, agents, consultants, and employees, of and from any and all actions, suits, claims, duties, causes of action, demands, obligations, liabilities, rights, damages (including punitive, exemplary, consequential, incidental or lost profit damages), or liability of any nature whatsoever, of any kind, whether known or unknown (including Unknown Claims), asserted or unasserted, whether at law or in equity which they now have, or ever had or may have, arising out of, based upon or attributable to, in whole or in part, or relating in any manner to (1) the subject matter of (i.e., the facts giving rise to) the Litigation, (2) the Selling Agreement, or (3) any aspect of the RI Program (the "Claims Released by

Invesco/Ascensus," together with the Claims Released by U-Nest, the "Released Claims"). For the avoidance of doubt, the Claims Released by Invesco/Ascensus do not include any actual or potential claim, whether known or unknown, involving U-Nest's participation in any Non-RI Programs.

9. **Unknown Claims**. "Unknown Claims" means any claim that any Party does not know or suspect exists in its favor at the time of the release of the Released Claims, including without limitation those which, if known, might have affected the decision to enter into this Settlement Agreement. With respect to any of the Released Claims, the Parties agree that, immediately upon the Settlement Date and with no further action by any Party, the Releasing Parties shall have expressly waived, relinquished and released any and all provisions, rights and benefits conferred by or under CAL. CIV. CODE § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable or equivalent to CAL. CIV. CODE § 1542, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR." The Parties, on their behalf and on behalf of the Releasing Parties, expressly acknowledge that they may discover facts in addition to or different from those now known or believed to be true with respect to the Released Claims, but that it is their intention to completely, fully, finally and forever extinguish any and all Released Claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts. The Parties expressly acknowledge that the inclusion of "Unknown Claims" was separately bargained for and was a key element of the Settlement Agreement, and was relied upon by the Parties in entering into this Settlement Agreement.

10. **Authority**. The Parties hereby warrant and represent to each other that the undersigning representatives have full and complete authority to execute this Agreement and bind themselves and the Release Parties to the terms hereof, that they have taken all necessary actions to duly approve the making and performance of this Agreement, and that no further corporate or other approval is necessary.

11. **No Admission of Liability**. The Parties acknowledge that neither this Agreement nor any provision hereof is intended to be a compromise among the Parties with respect to disputed facts and law and should not be considered an admission of liability.

12. **Confidentiality and Non-Disclosure**. The Parties and their attorneys further agree that the terms of this Agreement are strictly confidential and that no further disclosure, report or suggestion concerning same shall be made to any person or entity, except as required by law, regulation or rule of a self-regulatory organization, or required for a legitimate business purpose, including in connection with the audit or review of company financial statements or tax returns, or review by the company's legal advisors.

13. **Other Assurances and Duty to Cooperate**. Each Party hereto shall provide such further and other written assurances necessary to effectuate the terms and intent hereof and cooperate with each other to the extent necessary to effectuate the provisions of this Agreement

after it becomes effective. The Parties will continue to fulfill any existing obligations of good faith and fair dealing in their interactions and cooperate regarding the RI Program through December 31, 2019.  If U-Nest or a U-Nest end-user requests information regarding the end-user's account after December 31, 2019, Ascensus will follow its usual business practices in responding.

14. **Severability**. Any provision of this Agreement held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Agreement and the effect thereof shall be confined to the provision held unenforceable.  The Parties expressly agree that the terms and provisions of this Agreement are contractual in nature and not merely recitals.

15. **No Waiver**. The provisions of this Agreement may not be changed, discharged, terminated, altered or waived orally, but only by an instrument in writing signed by the Parties hereto.  The failure by any Party to enforce its rights under this Agreement on any occasion shall not operate as or be deemed to be a waiver of any future enforcement or exercise of such rights.

16. **Construction of Agreement**. No provision of this Agreement shall be construed against or interpreted to the disadvantage of any Party by any court or other governmental or judicial authority by reason of such Party's having or being deemed to have drafted, prepared or imposed such provision.

17. **Entire Agreement**. This Agreement shall constitute the entire agreement among the Parties with respect to the subject of this Agreement and shall supersede and replace any previous agreements and understandings between the Parties, whether written or oral, with respect to the subject matter of this Agreement.

18. **Recitals**. The foregoing Recitals are incorporated herein by reference as integral parts of this Agreement.

19. **Enforcement**. Notwithstanding any of the foregoing releases contained in this Settlement Agreement, nothing in this Settlement Agreement is intended to prevent any Party to this Settlement Agreement from seeking enforcement of any of the terms, conditions or other provisions of this Settlement Agreement, and no Party is waiving or releasing the right to seek such enforcement.

20. **Governing Law and Forum Selection**. This Settlement Agreement is to be governed and construed in accordance with the laws of the State of Rhode Island, applied without regard to its law applicable to choice of law.  The Parties agree that the state and federal courts located in the State of Rhode Island shall have exclusive jurisdiction over all disputes arising between the Parties in relation to this Settlement Agreement including, without limitation, proceedings to enforce the terms hereof and disputes relating in any way to the Parties' obligations set forth herein, and the Parties hereby submit to the personal jurisdiction of such courts for all such purposes.

21. **Multiple Counterparts**. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which constitute one and the same Agreement.

[SIGNATURES APPEAR ON NEXT PAGE]

6
**CONFIDENTIAL**

**IN WITNESS WHEREOF**, the Parties hereto have executed this Settlement Agreement and Release as of the day and year first above written.

**U-Nest Holdings, Inc.**

_____
Ksenia Yudina
Chief Executive Officer


**Invesco Distributors, Inc.**

_____
Jeffrey H. Kupor
Secretary and Senior Vice President


**Ascensus College Savings Recordkeeping Services, LLC**

_____
Joseph Dansky
Secretary

**IN WITNESS WHEREOF**, the Parties hereto have executed this Settlement Agreement and Release as of the day and year first above written.

**U-Nest Holdings, Inc.**

_____
Ksenia Yudina
Chief Executive Officer

**Invesco Distributors, Inc.**

_____
Jeffrey H. Kupor
Secretary and Senior Vice President

**Ascensus College Savings Recordkeeping Services, LLC**

_____
[name]

**IN WITNESS WHEREOF**, the Parties hereto have executed this Settlement Agreement and Release as of the day and year first above written.

**U-Nest Holdings, Inc.**

_____

Ksenia Yudina

Chief Executive Officer

**Invesco Distributors, Inc.**

_____

Jeffrey H. Kupor
Head of Legal, Americas

**Ascensus College Savings Recordkeeping Services, LLC**

_____

Joseph Dansky

Secretary

# EXHIBIT A

**CONFIDENTIAL**

81734925v.1

[DATE]

[Account Owner Name]
[Account Owner Address]

Re: The Named Financial Advisor on your CollegeBound 529 Account(s)

Dear [Account Owner Name]:

Effective [DATE], 2020, the named Financial Advisor on your CollegeBound 529 Account(s) has been removed. As a result, the Financial Advisor previously named on your account is unable to access your account(s) or perform any transactions on your behalf.  However, as the account owner, you maintain full access to your account(s).

For more information, please refer to the CollegeBound 529 Program Description, or you may contact a Client Service Representative at 1.877.615.4116 any business day from 8 a.m. to 8 p.m. Eastern Time. You may also visit the plan website at www.collegebound529.com and follow instructions to access your account(s).  You may also contact your Financial Advisor for more information about this letter.

[Signature]

**CONFIDENTIAL**