# Exhibit B

Service Organization: U-Nest Holdings LLC
CRD: 294806
MSRB:

## Agreement for Recommending 529 Plan Securities

The CollegeBound 529 ("Program") is a qualified tuition program governed by Section 529 of the Internal Revenue Code of 1986, as amended, sponsored by the State of Rhode Island and Providence Plantations (the "State") and administered by the Rhode Island Office of the General Treasurer (the "Treasurer"), for which Ascensus College Savings Recordkeeping Services, LLC is the program manager ("Program Manager") and Invesco Distributors, Inc. ("Company") is the distributor pursuant to the Program Management Agreement between the Treasurer and the Program Manager dated March 18, 2016 and a Services Agreement to be entered into between the Program Manager and the Company (collectively, the "Program Agreements"). You (the "Service Organization") are hereby authorized to recommend, on a non-exclusive basis, the municipal fund securities ("Program Interests") in the Program, upon the following terms and conditions.

1. **Recommendation of Participation Agreement and Program Interests to Clients / Client Transactions**

(a) Service Organization is authorized to recommend Program Interests to its clients ("Clients"). Service Organization will recommend such Program Interests only in accordance with this Agreement, the then-current offering document for the Program (as may be supplemented from time to time, the "Program Description"), the then-current participation agreement, and any related new account application (collectively, "Participation Agreement"), and in compliance with all applicable federal and state securities laws and such terms and conditions and procedures as the Treasurer may from time to time prescribe. Service Organization will not be acting as a broker or dealer with respect to the offer or sale of Program Interests to any person, including its Clients.

(b) Service Organization is further authorized to manage its Clients' accounts containing Program Interests, including being authorized to view information related to such Client Accounts and to make distributions from such accounts.

(c) Service Organization acknowledges and agrees that there is no assurance that any investment fund or product will be included in the Program and, if included, such investment fund or product may be removed at any time. Service Organization further acknowledges and agrees that, except as required by the Treasurer, Company (i) shall not be obligated or responsible for making Program Interests available for sale to Clients in any jurisdiction, (ii) reserves the right to reject any purchase, exchange or withdrawal ("Order"), and (iii) reserves the right, at its discretion and without notice, to suspend or limit the sale of Program Interests or withdraw entirely the sale of Program Interests. Upon notice of any election to suspend sales of Program Interests, Service Organization agrees to suspend all recommendations of such Program Interests until otherwise notified by Company. Company shall have full authority to take such action as it may deem necessary or advisable in respect of all matters pertaining to the offering of the Program Interests. In no way shall the provisions of this Agreement limit the authority of Company, the Program Manager or the Treasurer to take such lawful action as they may deem appropriate in connection with all matters relating to the operation of the Program and the sale of Program Interests.

(d) Service Organization shall not give or cause to be given to anyone any information or make any representation other than those contained in (i) the current Program Description and the Participation Agreement or in currently applicable printed sales material issued by Company as information supplemental thereto specifically for use in connection with the recommendation of Program Interests, including without limitation, promotional materials, sales literature, advertisements, press releases, announcements, statements, posters, signs,

slides or other similar material (collectively, "Sales Materials"), and (ii) such other information and materials as may be approved in writing by Company prior to usage. Upon reasonable notice to Service Organization, Company may in its sole discretion and as directed by the Treasurer, terminate at any time the use of any Sales Material or other information and materials which may have been previously approved by Company for use in connection with Service Organization activities hereunder and Service Organization shall comply with any notice of such termination and shall not use, or permit any representative, employee or other agent to use, such Sales Material or other information or materials thereafter; provided, however, Company reserves the right to require Service Organization to immediately terminate the use of any such Sales Material or other information or materials to the extent Company or the Treasurer in their sole discretion deem those materials not to be in compliance with Applicable Law and Service Organization shall promptly comply with any notice of such termination and shall not use, or permit any representative, employee or other agent to use, such Sales Material or other information or materials thereafter. Company will supply to Service Organization the Program Descriptions, Participation Agreement and Sales Material as issued in such reasonable quantity as Service Organization may request.

(e) Service Organization will have no right under this Agreement to cause any distribution, withdrawal or transfer to be made from or under the Program or any account thereof or in connection with any change of ownership of any Program account or the beneficiary of any such account, other than as may be authorized (i) in accordance with any procedures the Treasurer, Program Manager or Company may specify in their sole discretion from time to time and (ii) pursuant to the terms that Service Organization may be authorized under any applicable agreements between Service Organization and Client.

(f) Service Organization acknowledges and agrees that accounts will not be opened nor will contributions be accepted in accounts opened or maintained through arrangements with employers (including Service Organization and its affiliates) or any third-party organizations involving payroll, periodic or similar account deduction on behalf of Clients or any other person.

(g) The Participation Agreement and Program contributions are subject to acceptance by the Treasurer and the Program Manager in their sole discretion, become effective for purposes of this Agreement only upon confirmation by the Treasurer and the Program Manager, and are subject to rejection by the Treasurer and the Program Manager.

2. **Compensation.**

Service Organization will not be entitled to receive any commissions or other compensation with respect to the recommendation of Program Interests to its Clients.

3. **Certain Agreements, Representations, Warranties and/or Covenants.**

(a) Each of the parties acknowledges that:

(i) It shall keep confidential the terms and conditions of this Agreement and all proprietary information of the Program and will disclose such information to third parties only upon receipt of written authorization from Company or as may be required by Applicable Law. Notwithstanding the foregoing, Service Organization may disclose such information relating to the Program to its employees, attorneys and other representatives solely for purposes of performing its obligations under this Agreement or as required by Applicable Law.

(ii) It shall not share or otherwise use nonpublic personal information in violation of or in a manner inconsistent with applicable privacy laws, including, but not limited to, Title V of the Gramm Leach Bliley Act of 1999 and applicable state law.

(iii) It and its employees will, upon reasonable request, be available during normal business hours to consult with Company and/or its designees concerning the performance of the services and other obligations under this Agreement.

(b) Each of the parties hereto represents and warrants that (i) it has full power and authority, and has taken all action necessary to enter into and perform this Agreement, (ii) this Agreement has been fully and validly executed, (iii) this Agreement constitutes a legal, valid and binding agreement between the parties enforceable in accordance with its terms, and (iv) by entering into this Agreement, it will not breach or otherwise impair any other agreement or understanding with any other person, corporation or entity.

4. **Limitations on Our Relationship**

Neither this Agreement nor the performance by Service Organization or Company of its respective obligations hereunder will be considered to constitute an exclusive arrangement, or to create a partnership, association or joint venture between the parties, the Program Manager or any Governmental Authority, and Service Organization shall not make any representation to the contrary. Neither Company, its affiliates, the Program Manager, nor any Governmental Authority will be liable for Service Organization's acts or obligations under this Agreement or any other advice or services provided by Service Organization to Clients. Service Organization will not have the right or authority to assume, create or incur any liability or any obligations of any kind, express or implied, against or in the name of, or on behalf of, Company or its affiliates or the Program Manager or any Governmental Authority. Company will not be under any obligation to Service Organization, except for obligations expressly assumed by Company in this Agreement. Service Organization will not use nor allow its representatives, employees, partners, joint venturers or agents to use the name of Company or the name of any of their affiliates, the Program Manager, or any Governmental Authority (including any trademark, trade name, service mark or logo) without our prior written consent except as required by law.

5. **Amendment**

Company reserves the right to amend this Agreement at any time upon written notice to Service Organization, and Service Organization's recommendation of Program Interests after notice of such amendment has been sent shall constitute the Service Organization's agreement to such amendment.

6. **Withdrawal and Termination.**

(a) The Treasurer and Company reserve the right, in their sole discretion, and without notice, to suspend the offer and sale of the Program Interests or withdraw, at any time, the offer and sale of the Program Interests entirely or in one or more states or other jurisdictions.

(b) Either party may terminate this Agreement, without penalty, upon thirty (30) days' prior written notice to the other party. Company may terminate immediately in the event that (i) Service Organization files a petition in bankruptcy or a petition seeking similar relief under any bankruptcy, insolvency, or similar law, or a proceeding is commenced against Service Organization seeking such relief, (ii) Company receives notice from Service Organization or otherwise of the occurrence of any proceeding, civil action or arbitration involving the Program or Program Interests, (iii) the Program Manager's agreement with the Treasurer for the provision of services to the Program terminates, or (iv) the agreement between Company's affiliate and the Program Manager for the provision of services to the Program terminates. Service Organization agrees to notify Company promptly and to immediately suspend recommendations of Program Interests upon occurrence of the events described in sub-clauses (i) and (ii) of this subsection 5(b).

(c) Either party may terminate this Agreement effective immediately in the event that, in the sole discretion of the terminating party, the non-terminating party has breached any of its representations, warranties or obligations under the Agreement.

(d) In addition, subject to the terms of the Program Agreements, the Treasurer may terminate this Agreement as to the Program at any time upon 30 days' prior written notice to each party.

(e) Company's failure to terminate this Agreement for a particular cause will not constitute a waiver of the right to terminate this Agreement at a later date for the same or another cause. Sections 3(a), 6(e), 8, 9, and 10 of this Agreement will survive termination of this Agreement.

(f) In the event this Agreement is terminated for any reason, Service Organization will assist in the orderly transition to any entity succeeding to the control of the Program accounts as directed by the Treasurer, Company, the Program Manager or their designees, including by promptly transferring to such successor historical records relating to such accounts.

### 7. Assignment.

This Agreement is not assignable or transferable without the prior written consent of the other party, except that upon 30 days' prior written notice to Service Organization, Company may assign or transfer this Agreement to any successor that becomes principal distributor of Program Interests. Absent Company's prior written consent, this Agreement will terminate automatically in the event of its assignment (as defined in the Investment Company Act of 1940, as amended) by Service Organization.

### 8. Jurisdiction, Governing Law, No Trial by Jury, Limitations on Liability.

This Agreement will be interpreted, construed and enforced in accordance with the laws of the State of Rhode Island, without reference to its conflict of laws principles. The courts of the State of Rhode Island and the United States District Court for the District of Rhode Island shall have continuing exclusive jurisdiction over any and all disputes related to or arising out of this Agreement. THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY. Neither party shall be liable for any failure or delay in performance under this Agreement to the extent said failure or delay is proximately caused by conditions beyond its reasonable control and occurring without its fault or negligence, including, but not limited to, acts of God, government restrictions, wars, insurrections and/or any other cause beyond the reasonable control of the party whose performance is affected; provided that, as a condition to the claim of non-liability, the party experiencing the difficulty shall give the other prompt written notice, with full details following the occurrence of the cause relied upon. NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY SPECIAL, INDIRECT, INCINDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOSS OF BUSINESS REPUTATION OR OPPORTUNITY OR LOSS OF PROFITS, ARISING OUT OF OR RESULTING FROM THE BREACH OF THIS AGREEMENT BY THE OTHER PARTY, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. This Section shall survive termination of this Agreement.

### 9. Notices.

All notices required or permitted to be given under this Agreement will be given in writing and deemed given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested);

or (c) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Notices must be sent to the respective parties at the address(es) indicated below (or at such other address for a party as shall be specified in a notice given in accordance with this Section 11).

To: Service Organization:
*U-Nest Holdings LLC*
*2920 West Olive Ave, Ste 105*
*Burbank, CA 91505*

To: _____      With a copy to: _____

Notwithstanding the foregoing, (i) notices which are traditionally sent via NSCC Systems may be sent by those means and shall be effective as specified in the NSCC rules, or if not specified therein, when sent, and (ii) notices which are traditionally sent by electronic transmission (such as back office communications) may be sent in that manner and shall be effective when sent.

### 10. Miscellaneous.

(a) Neither party hereto shall be, act as, or represent itself as, the agent or representative of the other, nor shall either party have the right or authority to assume, create or incur any liability or any obligation of any kind, express or implied, against or in the name of, or on behalf of the other party. Except as provided in Section 10(g), this Agreement is not intended to, and shall not, create any rights against either party hereto by any third party solely on account of this Agreement. Neither party hereto shall use the name of the other party in any manner without the other party's prior consent and except as required by Applicable Law.

(b) This Agreement constitutes the entire agreement and understanding between the parties with respect to the Program and supersedes any and all prior agreements between the parties and between Service Organization and the Program Manager (including its affiliates) with respect to the Program, the sale of Program Interests or any other subject covered by this Agreement.

(c) If any provision of this Agreement is held or made invalid by a court or regulatory agency decision, statute, rule or otherwise, the remainder of this Agreement will continue to be valid and enforceable.

(d) The captions in this Agreement are included for convenience of reference only and in no way define or limit any of the provisions of this Agreement or otherwise affect their construction or effect.

(e) This Agreement will become effective and be binding upon Company and Service Organization when signed by Company and accepted by Service Organization in the space provided below.

(f) Except as otherwise authorized by Service Organization, neither Company nor its affiliates shall use names, addresses or other information of Clients or Service Organization's prospective clients known to Company solely as a result of Service Organization's activities under this Agreement for any purpose other than fulfillment of Company's duties and responsibilities in connection with the Program, or as may otherwise be required under Applicable Law.

(g) Service Organization acknowledges and agrees that the Program Manager and, subject to Section 10(h), any applicable Governmental Authority are express and intended third party beneficiaries of this Agreement with respect to the Program and may enforce the provisions of this Agreement directly against it. Service Organization acknowledges and agrees that the Program Manager and each Governmental Authority is relying on the representations contained in this Agreement as if they were made directly to each such entity.

The undersigned hereby accepts and agrees to all of the provisions set forth in the foregoing Agreement as of the date executed by Company.

Invesco Distributors, Inc. ("Company")

Signature: *Brian Thorp* (signed)
Print Name: Brian Thorp
Title: VP
Date: 5-7-18

Service Organization Name: U-Nest Holdings LLC

By: _____ (Authorized Signature)
Name (print): Ksenia Yudina
Title: CEO
Date: 5/7/2018
CRD Number: 294806
MSRB Number: _____
Address: 2920 West Olive St. #105
Burbank, CA 91505