```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
U-NEST HOLDINGS, INC.,             )
                                   )
          Plaintiff,               )
                                   )
     v.                            )   C.A. No. 19-659 WES
                                   )
ASCENSUS COLLEGE SAVINGS           )
RECORDKEEPING SERVICES, LLC,       )
                                   )
          Defendant.               )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

Before the Court is Plaintiff's Motion for Relief from Judgment, ECF. No. 38. For the reasons that follow, the motion is DENIED.

I. Background

United States Code Title 28, § 529 governs qualified tuition programs, which are tax-exempt education savings plans. Plaintiff U-Nest Holdings, Inc., ("U-Nest") offers a mobile phone application ("app") that allows users to save for their children's education using these so-called § 529 Plans. Second Am. Compl. ¶ 7, ECF No. 27. Through the app, U-Nest functions as a financial advisor. See Prelim. Inj. Hearing Tr. 10:11–12, ECF No. 36. Defendant Ascensus College Savings Recordkeeping Services, LLC, ("Ascensus") manages a Rhode Island-sponsored qualified tuition

program governed by § 529 ("RI Program"). Id. at ¶¶ 8-9. In this role, Ascensus "accepts paperwork from investors . . . and helps with the account opening processes, the account monitoring processes, more or less servicing [the plans]." Prelim. Inj. Hearing Tr. 6:20-23. Pursuant to an agreement with Ascensus, a non-party, Invesco, is the RI Program's distributor. Second Am. Compl. ¶ 10. As distributor, Invesco manages the municipal fund securities in the RI Program and "sets up the funds that will be the investments, that investors get shares in when they open an account and submit money to the plan." Prelim. Inj. Hearing Tr. 7:6-9.

In May of 2018, before launching its app, U-Nest entered "an agreement for recommending 529 Plan Securities" with Invesco. Second Am. Compl. ¶ 11; Compl. Ex. B. Per that agreement, "U-Nest was authorized to recommend, on a non-exclusive basis, Invesco-managed municipal funds securities that are in the RI Program." Second Am. Compl. ¶ 13. In October 2018, U-Nest released its app. Id. at ¶ 12. One year later, Invesco notified U-Nest that it was terminating their agreement, alleging that U-Nest had breached it.[1] Id. at ¶¶ 23-24. Because of the termination, U-Nest would lose access to the RI Program. Id. at ¶¶ 25-30.

---

[1] The notice provided: "U-Nest . . . used the Invesco name in its marketing materials, including its website and digital application description, without the advance written consent of Invesco Distributors, Inc. as required under Section 4 of the

"Because [its] approximately 500 end-user account holders . . . would have been negatively impacted if Ascensus [acting through Invesco] were permitted to terminate U-Nest's access to its accounts on November 30, 2019, U-Nest filed an action in Rhode Island Superior Court on November 25, 2019 . . ." against both Ascensus and Invesco. Id. at ¶ 31. Days later, the parties entered a settlement agreement. Id. at ¶¶ 32–35. The agreement provided, inter alia, that U-Nest would retain access to account information regarding its existing RI Program clients until December 31, 2019. Id. at ¶ 34.

As a result of the dispute and settlement, U-Nest began transferring its RI Program accounts to a corollary program in New York ("NY Program"), which Ascensus also manages. Id. at ¶¶ 36–38, 42. However, during the rollover process, the program distributor notified U-Nest that it could no longer roll over accounts and that all current accounts in the NY Program were "frozen." Id. at ¶¶ 37–38. This termination occurred at least partly because Ascensus informed the NY Program distributor that U-Nest's accounts were "high risk." Id. at ¶¶ 40–41.

Prior to the December 31 deadline, U-Nest initiated this case, alleging that Ascensus breached the settlement entered in the Rhode

---

Agreement. In accordance with Sections 6(b) and 9 of the Agreement, termination is effective November 30, 2019." DX1, ECF No. 41-1.

3

Island Superior Court case, engaged in anticompetitive conduct in violation of Federal and State laws, and tortiously interfered with contractual relations, requesting injunctive relief as well as compensatory damages.  Id. at ¶¶ 49-148.  On the same day, U-Nest filed an Emergency Motion for Preliminary Injunction, ECF No. 6, requesting relief from the December 31 deadline.  Mem. Sup. Emergency Mot. Prelim. Inj. 1, ECF No. 6-1.  U-Nest argued that Ascensus's actions with respect to U-Nest's participation in the NY Program had hindered its ability to transfer RI clients, requiring an extension of the deadline, and that without relief its clients would lose access to their accounts.  Id. at 1-2.

On January 8, 2020, the Court held a hearing on U-Nest's Emergency Motion for Preliminary Injunctive Relief.  During the hearing, U-Nest's attorney presented several theories explaining why Ascensus was "forcing out" U-Nest, including the theory that Ascensus was developing (or hoping to develop) an app similar to U-Nest's.  Prelim. Inj. Hearing Tr. 21:8-12.  In response, Ascensus's attorney stated: "[w]e're not developing [an app]; this isn't some conspiracy to knock U-Nest out. . . . [W]e've got all these wild theories being spun; [o]h, we were developing an app. Well, where's the evidence that [Ascensus was] developing an app or these other things?"  Id. at 52:20-22, 60:15-18.  The Court denied the motion for preliminary injunction, determining that U-

4

Nest had not established irreparable harm.  Id. at 78:12-25, 79:1-25, 80:1-17.

U-Nest now claims that it relied on these statements in deciding "to quickly compromise and settle its antitrust claims against Ascensus rather than further pursue those claims."  Mem. Supp. Mot. Relief from J. 2, ECF No. 38-1.  The parties executed a settlement agreement in early 2020 ("2020 settlement").  Id. at 2.  On January 17, 2020, U-Nest filed a stipulation of dismissal, and on January 22, the Court entered the stipulation and terminated this case.

Just over a year later, Ascensus debuted its own 529 education savings mobile app.[2]  21-cv-00204-WES-PAS, Compl. Ex. B, ECF No. 1-2.  U-Nest contends that the release of this app proves that Ascensus's attorney lied during the preliminary injunction hearing because one year is not enough time to develop an app of this type. Mem. Supp. Mot. Relief from J. 3.  Thus, in May of 2021, three months after Ascensus announced its app, U-Nest filed another suit against Ascensus in this Court ("2021 case"), in which it claimed that the 2020 settlement agreement did not foreclose the suit. See 21-cv-00204-WES-PAS Compl. ¶¶ 121—23, ECF No. 1.

---

[2] U-Nest contends that Ascensus's app is the same as its app while Ascensus disagrees and argues that its app is different because it does not provide any advisory services.  Def.'s Mem. Opp. 22, ECF No. 41.

5

Thereafter, Ascensus filed a motion to dismiss the case, arguing insufficient pleading and that the 2020 settlement barred the claims.  21-cv-00204-WES-PAS Mem. Supp. Mot. Dismiss 1, ECF No. 21-1.  In response, U-Nest argued that the 2020 settlement must be set aside due to fraud, because Ascensus's counsel had lied about not developing an app. 21-cv-00204-WES-PAS Obj. Mot. Dismiss 16, ECF No. 25.  On March 21, 2022, following a hearing on the matter, the Court, *McElroy, J.*,[3] determined that U-Nest's only route to a release from the 2020 settlement was a motion for relief from judgment in this, the original, case.  21-cv-00204-WES-PAS Mem. & Order 16, ECF No. 30.  Thus, the Court denied the motion to dismiss and stayed the 2021 case so that U-Nest could file a motion for relief from judgment in the present case.  Two months later, on May 16, U-Nest filed the present motion for relief, arguing that Ascensus's attorney had lied about its app development during the preliminary injunction hearing and that U-Nest had relied on those statements when deciding to enter the settlement agreement.

III. Discussion

A motion for relief from judgment is governed by Federal Rule of Civil Procedure 60.  The applicable section of the Rule provides:

> On motion and just terms, the court may relieve a party

---

[3] The 2021 case was initially assigned to Judge McElroy. Following the filing of the present motion, however, the case was reassigned to this Court.

>or its legal representative from a final judgment, order, or proceeding for the following reasons:
>(1) mistake, inadvertence, surprise, or excusable neglect;
>(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>(4) the judgment is void;
>(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>(6) any other reason that justifies relief.

Fed R. Civ. P. 60(b). Rule 60(c) provides that "[a] motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."

Initially, U-Nest described its motion as being brought pursuant to Rule 60(b)(6) and, therefore, argued that the motion was subject only to the reasonableness requirement and not the one-year time bar. The Court has previously determined, however, that this motion is properly described as a Rule 60(b)(3) motion, as it is based on allegations of fraud.[4]  Dec. 12, 2022 Text Order.

"Relief under Rule 60(b) 'is extraordinary in nature' and,

---

[4] Given this ruling, the motion's timeliness is at issue. The parties have addressed the applicability of equitable tolling concepts to the one-year time limit applicable to Rule 60(b)(3) motions; however, given the Court's determination that this motion cannot prevail due to a lack of evidentiary support, the Court need not address the timeliness of the motion.

7

thus, 'motions invoking that rule should be granted sparingly.'" Unibank for Sav. v. 999 Priv. Jet, LLC, 31 F.4th 1, 8 (1st Cir. 2022) (quoting Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002)). Generally, "Rule 60(b) motions should not be granted unless the party seeking relief can show (1) that the motion was timely, (2) that exceptional circumstances justifying relief exist, (3) that the other party would not be unfairly prejudiced, and (4) that there is a potentially meritorious claim or defense." Roosevelt REO PR II Corp. v. Del Llano-Jiménez, 765 F. App'x 459, 461 (1st Cir. 2019). Analysis of these is guided by the relevant subsection of Rule 60(b). When reviewing these motions, "[c]ourts are not to 'give credence to [a] movant's bald assertions, unsubstantiated conclusions, periphrastic circumlocutions, or hyperbolic rodomontade.'" Id. (quoting Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 20 (1st Cir. 1992)).

A successful Rule 60(b)(3) motion requires a "demonstrat[ion of] misconduct . . . fraud or misrepresentation[ ]by clear and convincing evidence" and a "show[ing] that the misconduct [fraud, or misrepresentation] foreclosed full and fair preparation of [the] case." Karak, 288 F.3d at 21. U-Nest has failed to sustain this burden as it has presented no evidence to support its claim of fraud. See Roosevelt REO PR II Corp., 765 F. App'x at 461—62 (concluding that defendants not entitled to Rule 60(b) relief

8

because no evidence in support of motion was presented).

U-Nest's filings on this matter present a simple scenario: during the preliminary injunction hearing, Ascensus's attorney made a misrepresentation when he claimed that Ascensus was not developing an app, the purpose of which was to trick U-Nest into entering a settlement agreement. To support its version of events, U-Nest filed a copy of the preliminary injunction hearing transcript, PXA, ECF No. 38-2, a comparison of the U-Nest app and the Ascensus app, PXB, ECF No. 38-3, a transcript of the motion to dismiss hearing in 21-cv-00204-WES-PAS, PXC, ECF No. 38-4, and the complaint from 21-cv-00204-WES-PAS, PXD, ECF No. 38-5.  The only support for their claim that the statement made during the preliminary injunction hearing was false is an argument, contained in the briefing, that such an app could not be developed in thirteen months (the time between the hearing and the release of the Ascensus app). An attorney's claim, however, is not evidence, and it cannot support the remedy requested.[5]

Further, U-Nest has had multiple opportunities to present the necessary evidence. During the hearing on the motion for relief from judgment, the Court inquired as to whether an evidentiary

---

[5] U-Nest suggests it can avoid its evidentiary obligations because Ascensus has never said it did not lie. However, U-Nest has presented no law that supports a conclusion that Ascensus's decision to not directly disclaim the accusation removes U-Nest's burden to support its allegations.

9

hearing was needed, U-Nest's counsel responded that it was ready for such a hearing and "if your honor wants to have an evidentiary hearing . . . we would not object to that at all." At no point, however, did counsel affirmatively request such a hearing. See Bouret-Echevarria v. Caribbean Aviation Maint. Corp., 784 F.3d 37, 47 (1st Cir. 2015) (holding that, when requested, court must conduct an evidentiary hearing on Rule 60(b)(6)). In addition, the Court requested several sets of additional briefs, each presenting its own opportunity to provide evidentiary support. At each opportunity, U-Nest declined to present evidence.

Thus, all the Court has to go on is the movant's bald assertions. Without any evidence to support the allegations of fraud, the Court is unable to grant the extraordinary relief requested.

III. Conclusion

For the reasons contained herein, Plaintiff U-Nest's Motion for Relief from Judgment, ECF No. 38, is DENIED.


IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
District Judge
Date:  February 8, 2023